CHRISTOPHER L. SCILEPPI
LAW OFFICE OF CHRISTOPHER L. SCILEPPI, P.L.L.C.
115 W. Washington St.
Tucson, Arizona 85701
Telephone:     (520) 449-8446
Facsimile:      (520) 449-8447
Email:           info@scileppilaw.com
State Bar No: 021591
Attorney for Defendant Richard Molinar

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | Case No.: 21-CR-01599-SHR (LAB) |
|---|---|
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM |
| Richard Molinar, | |
| Defendant | |

COMES NOW, Defendant, Richard Molinar, by and through undersigned counsel, and submits his Sentencing Memorandum and asks that the Court impose a sentence of 37 months in custody.

Dated this 30th of November, 2022.

*/s/ Christopher L. Scileppi*
Christopher L. Scileppi
Attorney for Richard Molinar

SENTENCING MEMORANDUM - 1

<u>Certificate of Service</u>: I certify that on this day, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Rebecca Garvey
Assistant United States Attorney
United States Attorney's Office
Tucson, Arizona

I.      **Offense Conduct**

There is no dispute regarding the specific facts that gave rise to the charges (and ultimately the conviction) in this case. They are laid out in paragraphs 6-9 of the Presentence Report and regurgitated on page 2 of the government's Sentencing Memorandum. Mr. Molinar received and shared, via social media, several videos and images of child pornography. For this, he is going to prison. For how long is up to the Court.

II.     **Guidelines Calculation**

   a.     **Mr. Molinar's Criminal History**

Prior to his arrest for the instant offense, Mr. Molinar had never been arrested, ever. He was a model citizen. His criminal history score is correctly reported as zero and his criminal history category is correctly calculated as I.

   b.     **The Offense Level**

Mr. Molinar does not object to the offense level calculation (18, +2, +2, +2, +5, -3) as contained in the Presentence Report. The specific offense characteristics that have been applied in the Presentence Report all clearly apply, and there is no basis to object to their application. However, Mr. Molinar writes separately to address the fundamental flaws inherent in those guidelines.

In 1987, when the sentencing guidelines were first enacted, the possession of child pornography was not a federal crime. The guidelines covered only trafficking in child pornography. In 1990, the U.S. Sentencing Commission first enacted a guideline for possession of child pornography. The base offense level then was 10. The guidelines then had one available upward adjustment: depictions of minors under the age of 12. That resulted in a maximum total adjusted offense level of 12.

Since 1990, the guidelines applicable to the possession of child pornography have been amended 11 times. These amendments are relatively unique, as they largely resulted from congressional directives fairly described as legislative fiats requiring an upward modification of the guidelines. While these congressional directives are legally permissible, guidelines adopted under such directive do not carry the weight given to the guidelines developed by the Sentencing Commission – an expert sentencing agency working in consultation with penological and sociological experts.

The amendments to the guidelines are most notable for two things: a substantial increase in the base offense level and the creation of additional specific offense characteristics, which had the effect of dramatically increasing the guideline range applicable to an offender. These changes were largely the consequence of morality earmarks which were slipped into larger bills passed in the late 1990s and early 2000s, often without notice, debate, or study of any kind. Additionally, Congress specifically prevented the Commission from implementing carefully considered modifications that would have lowered applicable offense levels.

Consequently, a number of district courts across the country have concluded that the current version of U.S.S.G. § 2G2.2 "diverge[s] significantly from the Sentencing Commission's typical, empirical approach," frequently producing a sentence "greater than necessary to provide just punishment." *United States v. Hanson*, 561 F.Supp.2d 1004, 1008 (E.D. Wis. 2008); *see also United States v. Stern*, 590 F.Supp.2d 945 (N.D. Ohio 2008). "[T]he guideline ranges of imprisonment for possession of child pornography is a 'less reliable appraisal of a fair sentence.'" *Id*. at 960. The court in *Stern* was "particularly troubled that the guidelines for sentencing those who possess child pornography 'have been repeatedly raised despite evidence and recommendations by the United States Sentencing Commission to the

contrary.'" *Id*. It noted that "the most recent changes to the guidelines apparently came from two lawyers in the Justice Department who persuaded a novice Congressman to add them to the popular Amber alert bill." *Id*. (quoting *Hanson*, 561 F. Supp.2d at 1009). The courts in *Hanson* and *Stern* are not alone. *See United States v. Johnson*, 588 F.Supp.2d 997 (S.D. Iowa 2008); *United States v. Baird*, 580 F.Supp.2d 889 (D.Neb. 2008); *United States v. Shipley*, 560 F.Supp.2d 739 (S.D. Iowa 2008); *United States v. Grober*, 595 F.Supp.2d 382, 384-85 (D.N.J. 2008).

One of the biggest changes to the guidelines was that in addition to dramatically increasing the applicable base offense level, the changes in the guidelines have made almost every enhancement apply to almost every case. Take for instance the 2-level enhancement imposed in this case pursuant to § 2G2.2(b)(6) – an enhancement that applies whenever an individual uses a computer or interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material. What are the alternative methods of possession, transmission, receipt, distribution, or viewing? Printing and sending via U.S. Mail? Carrier pigeon? It is almost inconceivable that any offense could occur in today's day and age that did not trigger this specific offense characteristic. That leaves this less a "specific offense characteristic" and more a general way the crime is committed. The same could be said of the enhancement for possession of material that depicts prepubescent minors under § 2G2.2(b)(2).

The U.S. Supreme Court has emphasized that when guidelines are not supported by empirical data, they are entitled to less deference than guidelines that exhibit the Sentencing Commission's exercise of its characteristic institutional role as an expert agency tasked with promulgating empirically based guidelines. *Spears v. United States*, 551 U.S. 261, 129 S.Ct.

SENTENCING MEMORANDUM - 5

840 (2009). The child pornography guidelines, like those for crack cocaine, are not based on empirical research and consequently should receive little deference. *Grober*, 595 F.Supp.2d at 392-93, *United State v. Phinney*, 599 F.Supp.2d 1037, 1040 (E.D. Wis. 2009); *United States v. Gellatly*, 2009 WL 35166 (D. Neb. 2009).

### III. The 3553(a) Factors

#### a. The Nature and Circumstance of the Offense

There can be no argument that the possession and distribution of child pornography is an exceedingly serious offense. Frankly, the offense is amongst the most serious offenses that do not involve the direct use of violence or coercion on the part of the perpetrator. *See e.g., United States v. Holtz*, 285 Fed.Appx. 548, 553 (10th Cir. 2008) ("Possession of child pornography is a serious matter. It's not just the possession of it; it's what is done to innocent victims worldwide in order to allow adults to knowingly possess it."). Therefore, laws criminalizing the possession of child pornography are in place to reduce the market for exploitation of the children that are severely victimized by this crime. *See United States v. Duhon*, 440 F.3d 711, 719 (5th Cir. 2006) (judgment vacated on different grounds).

Although it is never easy to differentiate between various levels of unconscionable conduct, it remains true that possession and distribution of child pornography is the least serious of crimes on the continuum of conduct from possession to distribution to production to predatory abuse. *Stern*, 590 F.Supp.2d at 952, *Baird*, 580 F.Supp.2d at 893, *United States v. Goldberg*, 2008 WL 4542957 (N.D. Illinois 2008) ("It does sustain a market for child pornography, of course, but that market is unfortunately there regardless of what may happen to this defendant."). "The individual who possesses child pornography, while demanding

punishment, is considerably less culpable than a producer…of the exploitative materials and is a marginal player in the overall child exploitation scheme." *Stern*, 590 F.Supp.2d at 952.

  **b.**  **The Characteristics of the Defendant**

  Mr. Molinar is a 44-year-old man who, prior to his arrest here, had never been in trouble in his life. Mr. Molinar grew up in a small home with his mother, who has been paralyzed for Mr. Molinar's entire life. He has spent his entire adult life living with, supporting, and providing care for his mother.

  The Presentence Report indicates that Mr. Molinar's family members have a belief that he likely is autistic. Additionally, the Presentence Report notes several indicators of severe social anxiety and possible depression. These indicators are all present when you spend any significant length of time with Mr. Molinar. Put bluntly, Mr. Molinar's social development was stunted at some point and rather than having what society might consider a "normal" life for a middle-aged man, Mr. Molinar lives a relatively isolated life.

  Of concern to the government is Mr. Molinar's admission that he engaged twice in sexual conduct with a minor – once 22 years ago when Mr. Molinar was 22 and once 11 years ago when Mr. Molinar was 33. For three reasons, the Court should discount the government's concerns. First, this conduct was an absolute byproduct of Mr. Molinar being subjected to childhood sexual abuse at a very young age. Second, this conduct took place well over a decade (and up to more than two decades) ago. And third, this conduct is completely unsubstantiated.

  **c.**  **The Purposes of Sentencing**

  There is no question that Mr. Molinar has committed a serious crime. "Trading in child pornography is a very serious offense. The victims are the children themselves who are photographed engag[ing] in conduct that will probably cause them life-long harm and may

SENTENCING MEMORANDUM - 7

make still more victims of their eventual offspring…" *Stern*, 590 F.Supp.2d at 956; *see also United States v. Duane*, 533 F.3d 441, 452 (6th Cir. 2008) (quoting with approval a district court's recognition that "there is a market for this stuff because people like [the defendant] acquire it, and that market drives the victimization of these children."). But, "[r]espect for the law is promoted by punishments that are *fair*, however, not those that simply punish for punishment's sake." *Stern*, 590 F.Supp.2d at 956 (emphasis in original). "[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *United States v. Cernik*, 2008 WL 2940854 (E.D. Mich. 2008).

Child pornography must be universally condemned, and even a defendant with highly compelling personal characteristics should not be fully excused from such a heinous crime. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008). Society has found, "unfortunately, no better way to deal with this serious, serious problem than to incapacity or remove individuals from the community for a period of time not only as a form of punishment but a form of deterrence not only to [defendants] personally but deterrence to others who may find themselves similarly situated. *United States v. McIlrath*, 512 F.3d 421, 423 (7th Cir. 2008).

Another aim of sentencing is to protect the public from future crimes of the defendant. Richard Molinar, like many who have accessed child pornography, seems not to have initially appreciated the magnitude of the offense. The manner in which computer technology and high-speed internet access have made such material readily available in the presumed privacy of the home has removed substantial impediments to seeking out such material that previously existed. A further factor seems to be the lack of appreciation of the harm that simply viewing the

SENTENCING MEMORANDUM - 8

material does to children. In some respects, the internet is analogous to a huge file cabinet that contains an almost limitless number of documents and other forms of information. Viewed against such a backdrop, accessing child pornography can be rationalized as simply pulling out a drawer and simply looking at a photo or video that someone else took in the past.

While these changes in technology and the culture and the lack of appreciation of the harm done to children **DO NOT** excuse the behavior, they do suggest an explanation that people such as Mr. Molinar – people with no previous history of criminal or abusive conduct seem to be committing such crimes with increasing frequency. They also suggest that the realization that such conduct is not anonymous, that it carries substantial penalties, and that even simply viewing the material does substantial harm to children makes it such that first-time offenders are unlikely to repeat. *See United States v. Ontiveros*, 2008 WL 2937539 (E.D. Wis. 2008).

Another factor this Court considers is the need to provide Mr. Molinar with educational or vocational training, medical care, or other correctional treatment in the most effective manner. Mr. Molinar has made both good and bad decisions in his life. He has not, however, demonstrated a pattern of recidivism or violence that would justify disposal to prison for such a lengthy period as advocated by both the government and the Presentence Report. *See United States v. Moreland*, 568 F.Supp.2d 674, 687 (S.D. W.Va. 2008). One of the goals of sentencing remains the rehabilitation of convicts, and there is no reason to believe that Mr. Molinar cannot return to a law-abiding and societally productive life upon the completion of a 37-month sentence. By all accounts, Mr. Molinar is a productive member of society. And without a lengthy prison sentence hanging over his head, Mr. Molinar will be able to return to work, return to caring for his family, and return to living a relatively quiet, quaint life.

Lastly, this Court must address the need to avoid unwarranted sentencing disparities. And in this case, the Court is in an unenviable position. "Anyone seriously concerned about federal sentencing disparities must begin by taking a very close look at federal child porn cases." *Stern*, 590 F.Supp.2d at 961 (quoting Professor Douglas A. Berman, *Is there an Ivy-Leaguer Exception to Federal Child Porn Charges?* (October 22, 2008)). The *Stern* court found it clear that "one would be hard pressed to find a consistent set of principles to explain why some federal child porn defendants face decades in federal prison, some face many years in federal prison, while others only end up facing months. *Id*. Other courts have been struck by the inconsistency in the way apparently similar cases are charged and sentenced. *Goldberg*, 2008 WL 4542957 at 2.

In short, the national sentencing landscape presents a picture of injustice. In the absence of coherent and defensible guidelines, district courts are left without a meaningful baseline from which they can apply sentencing principles. The resulting vacuum has created a sentencing procedure that sometimes can appear to reflect the policy views of a given court rather than the application of a coherent set of principles to an individual situation. This problem is only exacerbated when child porn sentences become politicized, as happened during the confirmation hearings of Ketanji Brown Jackson to the United States Supreme Court. Politicians like Missouri Senator Josh Hawley and Texas Attorney General Ken Paxton publicly criticized Judge (now Justice) Jackson for her apparently lenient sentences imposed in child

| | |
|---|---|
| 1 | pornography cases.[1] The sentencing disparity that clearly now exists will only be exacerbated |
| 2 | so long as child pornography sentencing is treated as political rather than principled. |

### IV. Conclusion and Recommendation

Mr. Molinar no doubt deserves a meaningful prison sentence in this matter. A sentence of 37 months incarceration is just that. It is meaningful, it is punitive, it serves as a deterrent, and it is not unduly lengthy. For all the reasons stated above, Mr. Molinar respectfully requests that the Court impose a sentence of 37 months incarceration followed by lifetime supervised release.

---

[1] Senator Hawley tweeted out his criticism: "Judge Jackson went below the maximum, the minimum, and below what the government requested in every single case for which we can find records, except two. In those two the law required her to impose the sentence the government recommended."

SENTENCING MEMORANDUM - 11